for the appellant is Jesse Gilsdorf, for the employee is Mary Elbert Fritz, Mr. Gilsdorf you may proceed sir. Thank you your honor, good morning justice. The court I am sure was well aware of the factors involved in the child custody case and so I'm not going to belabor the points of the law, I think all of the justices here probably know them. I think that this case clearly is a strange one that the standards of the law are not to be reviewed normally as abuse of discretion or against the manifest weight of the evidence. However, much of the evidence in this case upon which we're asking the court is actually the evidence and statements of the opposing party. As such I think the court could probably just use a de novo review standard in much of this action. For instance, Mr. Bandy has filed and has admitted. I don't understand what you just said. How does the de novo review standard apply if the evidence is offered by the other side? Well, because in this particular instance it's not controverted and there is no issue of credibility of the witnesses and if I might clarify, Mr. Bandy has filed and admitted that he filed actions stating that he is unable to work and that he is basically disabled. There is no credibility of the witness issue that needs to be resolved on that. So you mean the determination of who should be the custodial parent then isn't addressed to the sound discretion of the trial court? It is, it is, but when we're looking at facts that aren't really contested things as giving weight to the demeanor of the witnesses is much diminished. Mr. Bandy says he's not able to work. He said, you know, when he says that and comes to court and says that, we agree with that. He cannot deny it and we can't deny it. How can we possibly consider giving a two year old to a person who can't even take care of themselves? Was that an argument made to the trial judge? Absolutely. And it's a sound argument. The man stated that he could not work and that evidence was well developed and well presented and he has a pending claim for disability that he has out there. Was there a separate petition as to guardianship of the child? As to guardianship of the child? I believe there was, yes Judge. I believe there had been one filed by the maternal grandmother. I was not involved particularly in that case, but I believe there had been and in fact I believe that it came up in the protection case that had been filed previously because the maternal grandmother had been called in that case and there was some evidence heard on that. I honestly can't remember much from that because I wasn't expecting the court to proceed into any kind of final judgment. If the court wishes, I will be happy to have the record supplemented because I wouldn't wish, since I didn't handle that case, I don't want to be misstating anything to the court out of ignorance, not out of any kind of attempt to mislead the court. Other than DCFS receiving something with respect to her, about her, which was closed by DCFS as far as this child is concerned? As far as DCFS, no. PACT Head Start had been involved with this. Who had? PACT Head Start. They had been in the home, there is an older half-sibling and PACT Head Start had been in the home providing services for the older sibling and prior to trial had started providing services for the minor in issue. But they had been in the home and in fact Ms. Shirley had testified that she had been in the home and saw no problems. She never called DCFS or anything like that. She is coming up short, looks to me like, with respect to both parents, the child is coming up short. Well, I don't know if I could say that because again, when Ms. Shirley, and again she works for PACT Head Start, she is not an interested party in this case. When she shows up to court and testifies that this child is cared for and that there is food and that all of these things of which Mr. Bandy complains aren't an issue, when DCFS comes out and investigates and unfounds the matter, I don't think that the child is coming up short in that matter. And also the police were called by Mr. Bandy when he made a kidnapping complaint. And I would note he did all of that. He made a kidnapping complaint, he filed for an order of protection, and he called DCFS basically in a period of time from a Friday afternoon to a Monday, or a Friday Saturday night to a Monday morning. But on the weekend he is complaining to the police the kid is kidnapped, they don't know where the child is at, and by Monday morning he is filing petitions for order of protection saying I do know where the kid is at, the child is with the mother and is at the child's maternal grandmother's house. I mean, this is some serious types of things for somebody to be stating and doing. So I don't think the child comes up short with both parents. I think it's clear the child comes up short with Mr. Bandy, who I believe is amply clear, is willing to say anything and do anything, whatever it takes to meet the needs of the day. Here's a man who makes all these complaints, and none of those complaints, I would note, included that the child wasn't being fed right. But after DCFS denies, after the police don't arrest her for kidnapping, after Judge Day denies the order of protection, now the new line of theory is, oh, the kid's not being properly fed. After a while you have to seriously question the credibility of people saying that, again, especially when Ms. Shirley from Packed Head Start is in the house after that. Why should we second Judge Day's determination on credibility in this matter? Well, because, again, there's really no issue of credibility. Mr. Bandy admitted that he called the police and made a kidnapping report. Were there disagreements in the testimony here? No, that's his testimony. I didn't ask about that bit of testimony. Are there disagreements in other places? Yes, sir. Absolutely. Why should we second Judge Day's resolution of this? Well, because I believe that it's very clear that the evidence that we know is uncontroverted or cannot be controverted or stated directly out of Mr. Bandy's own mouth clearly shows that anything else that is said is absolutely unbelievable. And it gets so bad because we don't know these people. Judge Day saw and heard them, compared them, could decide, see the questioning of them, the cross-examination. My question is, how do we second guess his credibility determinations from a cold record? Well, because the cold record in and of itself, sir, is so amply clear and, again, are things that are stated by Mr. Bandy and even his own mother. She states, again, this man who is supposedly disabled has the ability to go out and deer hunt. And that's his own mother's Now, when we look at that, what credibility issue is there? That is not contested by anybody. But what we see is that when it comes to setting child support, when I ask questions like, oh, are you able to work, the man says, oh, no, I can't do anything. I can't think of any job I can do. What's the nature of his disability? Oh, he claims that he has hearing aid, hearing deficiency, that he has hip problems, knee problems, shoulder problems. He cannot physically do any work at all. And that was a question that was specifically asked of him. Can you think of any work that you can do? No, I can't do anything. He can't do physical labor. It's not mental. There were no claims of mental disability. Were these injuries that resulted from an accident of some kind? Yes, sir. Yes. I believe it was a car accident. It was an old, long-standing car accident. But at the time of trial, there was a pending claim that he had filed for disability, saying that he was totally disabled. He admitted that. So again, when you ask the question, and it's a perfectly valid question, why should we second-guess Judge Day, there really is no issue of credibility. Because the man says, he's unable to work. What does that have to do with taking care of the child? Are you saying disabled people shouldn't be allowed to have custody of their children? No. No. Because when we say disabled people, that it's kind of a, you know, disabled depends on what the disability is. If you cannot go and work, how on earth, I mean, is it reasonable to believe that you can chase after a two-year-old? I mean, two-year-olds require a ton of care. They require a ton of up and down. Picking them up, carrying them around, feeding them. Like Judge Steinman says, Judge Day saw the parties in court. He was able to observe Mr. Bandy and make a determination, apparently, that he was a satisfactory custodian or the superior custodian. He was able to do that. And again, it's a situation where when a person comes in and says they are physically disabled, basically it's a matter of judicial estoppel. You cannot say, if you can take care of a two-year-old, I would note common sense. We have many, many daycare workers. If you can do that kind of work and be paid, you're obviously not disabled. So it's either you can, you're good enough health to be, work as a caretaker for a two-year-old, or you're not capable of taking care of your own kid. Well, when you say... Is this a dichotomy? Well, it is a dichotomy. But when you say you're not capable of physically taking care of yourself, that you need somebody else to support you, I think it's a very good example, especially when you say just generally disabled. There are people who have some disabilities, but we're talking here physical disabilities. The man says he can't lift things. He says he can't sit. He can't do anything. Following up on Justice McKellar's question, Judge Day was presented with the question of either Jennifer or Michael. There was no third option, was there? There was no third option. Well, actually... Well, there would be a third option, respectfully, sir. But there is none, but there would be. If what Mr. Batty was saying was true, if my client was this horrible person that DCFS needed to be called and was truly starving the child, but if any of that were true, then there is a third option. But simply put, DCFS came out and didn't find a problem. Packed Head Start, routinely in the household, they don't see a problem. The police there, called by Mr. Batty, there is no problem. And the simple fact that even Judge Day found in the order of protection hearing, all of the complaints that Mr. Batty made, there was no problem. He dismissed that and denied that as well. And why didn't he make your client the custodian? Well, that's... I like Judge Day. I respect the man. I disagree with his decision. I believe that it is just flat out off the mark wrong. Or else I wouldn't have filed the appeal. Did he consider all the factors under 602? I believe that Judge Day considered the factors. I cannot say that he didn't. I believe that he certainly would have. I believe Judge Day is a conscientious judge. I'm not going to say otherwise. I believe that his application of them, however, just misses the mark and misses it to the point that it is reversible. And again, when the man says he can't work... Didn't he testify that he was the primary caregiver in the household and that your client was not much interested in taking care of either Charles or her own daughter most of the time? Well, he did testify to that, except for one thing. Then why can't Judge Day look at that and say, well, I believe it? Well, he can look at that and say that he believes it, except for the nine months or so that this was pending, my client was the primary caretaker pursuant to a temporary relief order. Normally, what you're saying, Justice, makes perfect sense if you're talking an 8-year-old or a 7-year-old. But here we're talking an extremely young child where clearly for... I'd have to parse up the days, but approximately close to half the child's life, clearly the child was living with my client and not living with Mr. Pandy, notwithstanding his testimony to the contrary. The child was clearly living with the mother while all of this was pending, other than for the very brief time that there was that emergency order of protection that then was subsequently thrown out. So I understand what you're saying, Judge Day, couldn't make that determination, but when we start looking at the point of trial, clearly my client was the primary caretaker and had been for at least 6 months, if not 9 months. I believe it's closer to 9 months. And for a 2-year-old child, 9 months is a long time. When we look at further issues, I note that one of the things that... one of the factors the court has to look at, and this is again where I say Judge Day, again, how can anybody say that Mr. Pandy, who is calling DCFS on his ex-wife, calling the police and making reports that she's kidnapping the child, when he knows exactly where the kid is, filing for orders of protection, how can anybody say that Mr. Pandy is willing to foster a positive relationship with the non-custodial parent? Respectfully, with those facts, how can you say that? And that's perfectly summarizes our point here, that Judge Day dismissed the mark. I cannot imagine, and I find it almost just beyond the pale, because we then hear the argument that my client later wouldn't give a telephone number to Mr. Pandy, and how somehow that shows that she doesn't want to foster a positive relationship. I can't see anybody giving Mr. Pandy a telephone number. I can't see my client wanting to have anything to do with Mr. Pandy, because any time she does, she's getting the authorities called upon her. But simply put, with those facts, and those facts are undeniable, and again, Justice Steigman, you point out, why shouldn't we look at the credibility of the witnesses? Those facts are admitted. There's no credibility issue there. You have to. I don't see how you could say that that is not against the manifest way of the evidence, because all of those things were found to be abuse. We cite, I believe, the Carterman case, where just calling the police on your ex-wife, when there's no basis for it in and of itself, was found to be abuse for purposes of the domestic violence and harassment under the Domestic Violence Act. We have the exact same facts here, other than the fact that my client wasn't taken to the station, I believe. But he's calling the police on her. I think that's abuse and harassment. And again, those are facts that he admitted to. And again, we're only talking about reporting kidnapping, I believe. Class 2 felony? Class 1 felony? He may have admitted calling the police. I doubt if he admitted to harassing her. So I'm sure Judge Day heard evidence about why he called the police and what his state of mind was at the time. So in that respect, it's not undisputed, is it? Well, it really is. Because when he calls the police, it's on the weekend. And he did admit saying that he made a kidnapping report. On Monday morning, Justice Pope, he's filing a petition for an emergency order of protection stating exactly where the child's at. Within two days. So when we look at it, it is a legal determination at this point whether it constitutes abuse or harassment. And I would respectfully submit that if you're not committing a crime, if you're not kidnapping people, to have somebody call the police to say you're kidnapping, that's harassment. I don't think anybody would not believe that that is harassment. It is unreasonable under the circumstances, the classic definition. Clearly, something that had no purpose being done would cause a reasonable person emotional distress and clearly did cause my client emotional distress. Calling DCFS when there's no reason to do it, same result. Filing for emergency orders of protection when there's really no reason to do it, same result. And again, within a period of three days, that's a serious problem. When we look at the other factors, mental and physical health of all individuals involved, again, physical health, Mr. Bannaty, he says he's disabled. I think it's very difficult to say that that factor does not apply in my client's favor. When we look at the interaction and interrelationship of the child with his parents or other persons, that's one candidly I think that you have to look more at the credibility. But at the same time, my client has another child, older child, about four years old. These children grew up together, live together. That's a significant familiar relationship that is being impacted here. And again, it doesn't really depend on the credibility of witnesses. Children of that age, generally speaking, they need to be with their siblings. It's something that we find to be a very strong and important bond in life. When we look at the child's adjustment to home, school, and community, again, we have the people from PACT that start there in the home who have no axe to grind in this, saying they don't see any problems. They see basically everything's going along fine. All in all, I believe that it's clear that when we look at this, all of these factors clearly spell out that, in fact, custody should have been granted to my client and that the ruling is against the manifest way to the evidence. It is an abuse of discretion, and we would ask the court to reverse the lower court ruling. Thank you, Counsel. Thank you. Ms. Elbert-Fritz. Honorable Justices, Mr. Gilsdorf. Good morning. Good morning. I wanted to just address a couple of things that I wanted to tell you today. It seems he is saying, Your Honors, that being disabled means you're not fit. I totally disagree with that. There was no evidence brought out why seeking a claim for Social Security Disability disabled Mr. Bandy from being a fit parent. In fact, the witnesses that testified on behalf of fathers said when the parties were together with Michael Bandy's parents, Michael did the child care. And that is where Judge Day came to the conclusion that Michael was the primary caregiver. Michael had done this himself with very little assistance from Jennifer before the temporary order. The temporary order, I also might add, was entered by default against Mr. Bandy. And contrary to what my colleague's brief says, that motion to vacate the default temporary order was never heard. It was to be taken up with the trial of the case on the merits. How did the default come about on that? His attorney, Mr. Turpin, who preceded me in this case, entered into an agreed order without Mr. Bandy being present or authorizing the order. And it was done, I believe, between correspondents between the two attorneys, Mr. Gilstorf and Mr. Turpin. So you made a motion to vacate that? Yes, I did. And it was pending with the case. In fact, when we were in court in August, Judge Day told us that we would take that motion, we would reserve ruling on that motion, and just try the case all at once because trial was coming up in December and January. The other premise that I want to address is calling authorities, if you're a parent, calling DCFS, which I think Julie Bandy, the paternal grandmother, did, over the abuse that she saw Addison, the older half-sibling of Charlie Bandy, she saw Addison receive at her mother's hands. That's why the DCFS folks were called on when someone throws the truck keys and their cell phone at you and threatens to have someone come and mess your face up so you'd be irrecognizable. And the child was in the presence. And Mr. Bandy stated in the order of protection petition, which should not be in the record that was abstracted. It should not be at all. It's a different case number. But I see it's in our record. It's at Appendix 65. And thereafter, you can see what the basis of on A67 there was for seeking an order of protection. It was for the safety of the child and the violent acts of the mother. Was this all testified to before Judge Day? On the order of protection? No, on this. Were these matters before Judge Day at the hearing on this matter? Yes, Justice Steigman, they were. In fact, we went through all the factors in the evidence. And that was the one factor that the father had evidence on that mother was violent toward him. Throwing truck keys, throwing a cell phone at him, threatening to have his face messed up. And all this was in the presence of the child at the separation stage. But my point is, Ms. Justice Pope, you said how is calling authorities making someone necessarily a harasser? It could just be a concerned parent. And that's what Judge Day commented during the trial. He said, as long as the F.S. is called, it doesn't mean someone is a nasty parent or unwilling to cooperate. It just means they are being a good parent and concerned for their child. So it could be taken that way too. It doesn't necessarily mean that that proves a fait accompli that factor number eight has been proven just because my client called the police and the authorities about an order of protection. Mr. Gildard wants us to believe that that's an aha moment that proves Michael Bandy is not willing to cooperate and facilitate a close and continuing relationship between mother and child. So I wanted to talk about those two premises. I don't think we can, in this courtroom, make a giant leap, just as Judge Day didn't make a giant leap from the disability premise automatically meaning not fit and the calling authorities automatically meaning unwilling to cooperate. Did your client appear in court? Yes. He testified at length. Father testified. He testified on all the factors and then some as I laid out in my brief. The cell phone, the Facebook, the texting, the propping up the bottle and playing with your phone instead of holding and bonding to a baby child when you're feeding it. And the fact that Wes DeJanes, who I believe is here with us today in court, was her landlord only. When the judge saw the Facebook pictures and all the things that were up on Facebook, he could reasonably have assumed that she was not credible. Credibility is a big thing in this. And just because Mr. Gilsdorf and his client and evidence that they presented, which is kind of feeble in this case I would have to say, just because they didn't present anything that disputed the disability and put on any evidence of how it affected Michael Bandy's parenting doesn't mean he can sit back and say there's no credibility issue on that. It was his duty and the mother's duty to present those facts to the judge. And now we can't use it against Judge Day because those controverting facts were not asserted. We can't now say, oh, it's undisputed, therefore it's not a credibility issue, therefore we go to no vote. We don't. It's abuse of discretion, just as you pointed out, Justice Steigman. Abuse of discretion or against the manifest weight of the evidence. Justice McCullough, the guardianship was lost by the maternal grandmother. Both parents stood up in court at the financing of Mr. Bandy's parents against the maternal grandmother who was seeking custody of both Addison, the three-year-old, and Charlie, who was not even a year old at that time when that guardianship proceeding was going on. The parents prevailed on that. There was no third option either at the guardianship, because the superior rights controlled, or at this case. There were no interveners. There was not. And also I think it's the conclusion of my brief, it's odd that that unfounded DCFS report, which was not admitted into evidence by Judge Day, suddenly appears in our record. Was that authored and rejected? Yes, sir. Yes, sir. And it's in the testimony. We had a dialogue about that. And the judge said we could just talk about the events of the unfounded report, but that doesn't necessarily mean it didn't happen. On transcript volume 3, page 24, no, I correct myself, volume 4, page 24, Judge Day says you can ask her about the investigation or the incident, but we don't need the letter. That's what he was telling Mr. Gilsdorf. Quote, that's line 17. So he rejected the letter as it should have been in the appendix. And then the court at volume 4, page 24, line 23 says yes, and we've covered that. It was unfounded. And the inference is I took it to mean that it doesn't mean that it was necessarily a false report, just because it's unfounded. That's why we don't admit unfounded reports. DCFS regional council will tell us that every day, all day long. Why didn't you move to strike it from the record? Really, it didn't matter to me, because it was excluded by Judge Day. I don't think this court will pay attention to it if Judge Day didn't and told Mr. Gilsdorf it couldn't be admitted. These are people of little means, Justice Pope. Very little means. Neither one works. So I don't want to spend a lot of time. The OP was for violence. I've pointed that out to you. The disability predated the marriage. It was an auto accident in 2001 when Mr. Bandy was still in high school. And his old home school teacher came and testified about her observations. In fact, all of father's witnesses had seen both mother and father taking care of Charlie. And all of father's witnesses could comment on both qualities of parenting and parenting skills and care. However, mother's two witnesses had never met father, never saw Mr. Bandy in the presence of the children, only saw them exclusively in mother's care. So it's comprehensible and probable that Judge Day didn't give as much weight to mother's evidence as he did to father's evidence. I don't have too much else to say other than just because you may be disabled from working and you can't sit in one place too long, it doesn't mean you can't parent a child. And both of these people, Mr. Bandy and Mrs. Bandy, have significant help from their families in child care and financially in other matters. This argument about being disabled sounds more like a lie. The judge didn't make mom the custodial parent because she was not credible. And this record failed to show that she was the better parent of the two. The only competitors before Judge Day were mother and father. And between the two, I think it is proper exercise of discretion or balancing the record before the judge to say that father was the better custodian. On this record, honorable justices, on this record, no reasonable person would have been able to give custody of this little boy that was testified about to mother. And it would have been against the manifest weight of all the evidence that was presented and the credibility of the witnesses that we have to defer to Judge Day to determine to have given custody to mother. Thank you all for your time. Thank you, counsel. Mr. Gilsdorf, any rebuttal, sir? I'm in quite trouble because Mr. Bandy's testimony is clear and I'm referring to page 70 from December 7th. And we're talking about the incident of the supposed cell phone throwing where counsel just a moment ago told me that this was done in the presence of the child. You may recall counsel stating that. And I asked him, you went to the Pike County Sheriff's Department, claimed that his ex-wife kidnapped the son, yes. You know full well that she was staying at her mother's home, it says Rackett, I don't know, but that's fine. But it goes down further. You saw Jennifer, oh there. Now a moment ago, counsel was trying to tell you that the children were there. So again, this is where they're trying to have it both ways. He testifies, I didn't see the children there. Counsel gets up and says the children were there. If the children were there and he was going and making kidnapping reports to the police, it's abuse and harassment. And if the children were there, it's abuse and harassment. And this is the type of thing that we see going back and forth. Again, Justice Puckett asked about the injuries and I asked him, quote, don't have the ability to do light manual labor. The answer was no, not with my injuries. Light manual labor. Basic, so I asked further, and I'm going to paraphrase, there's no job you could do. And the answer is no. Now I'm not trying to, because we know legally, just because somebody has a disability, that legally doesn't mean they can't take care of kids. But when somebody says they can't do manual labor, light manual labor, they can't do any work, they can't do anything, it's reasonable to hold them to what they said. It's wholly appropriate to hold them to what they've said. Wholly appropriate. Now when counsel was talking a few moments ago about the cell phone throwing incident, please keep in mind and remember, all of that was in the order of protection petition, heard by Judge Day, and denied. Found against Mr. Bandy. And that is what we see here. Oh, physical abuse, cell phone throwing, denied, not found to be true. And that was, we have the thing in the record, I realize the clerk had left that in the record with regards to the DCFS unfounded report, but my client testified it was unfounded and Judge Day even said, well he was talking about it, you heard counsel say, well we have an unfounded report, we're not going to admit the record. But simply put, we have somebody calling up and making these reports. No basis to it, unfounded. No basis to arrest my client for kidnapping. No basis to believe that she was physically abusive, and it was again, found against them. Simply put, it is against the manifest weight of the evidence. It is completely against the manifest weight of the evidence. Reversal is the only wholly appropriate thing to do in this matter. And just very briefly with regards to the agreed order for the temporary visitation, just to clarify, at the end of the order of protection hearing, Judge Day directed my client have the child returned to her, and counsel sat down together and did what counsel, I would think would be wholly appropriate to do, try to figure out some visitation. And that was done by agreement. Thank you counsel, take this matter under advisement.